IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| LEGRAND P. BELNAP, M.D.,<br><br>      Plaintiff,<br>v.<br><br>IASIS HEALTHCARE CORPORATION, a Delaware corporation; SALT LAKE REGIONAL MEDICAL CENTER, L.P., a Delaware limited partnership, D.B.A. SALT LAKE REGIONAL MEDICAL CENTER; BEN HOWARD, M.D.; ALAN DAVIS, M.D.; ANGELO CHACHAS, M.D.; WANDA UPDIKE, M.D.; KATHY OLESON; and DOES 1-10,<br>      Defendants. | **MEMORANDUM DECISION AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION**<br><br><br>Case No.2:14-cv-00086<br><br>District Judge David Nuffer |

  Legrand P. Belnap, M.D. ("Dr. Belnap") requests a preliminary injunction to enjoin a Fair Hearing proceeding scheduled to take place in February 2015.[1] Dr. Belnap argues an injunction is appropriate because Defendants have "targeted him" for filing the current lawsuit against them and "are now the driving force behind this new adverse recommendation and upcoming Fair Hearing . . . ."[2] However, Dr. Belnap's injunction relies on events and seeks relief not pled in the Complaint and he has failed to exhaust his administrative remedies. He also fails at this time to establish the necessary factors for a preliminary injunction. For these reasons, the Motion is DENIED.

---

[1] Plaintiff's Motion for Preliminary Injunction and Memorandum in Support Thereof ("Motion") at 6, docket no. 37, filed December 22, 2014.

[2] *Id.* at 6.

RELEVANT FACTS ........................................................................................................................ 2
    The Complaint ........................................................................................................................ 3
    The Motion for Preliminary Injunction .................................................................................. 4
DISCUSSION ................................................................................................................................. 8
    Dr. Belnap Has Not Shown He Is Likely to Succeed on the Merits ....................................... 8
        The Relief Sought in the Motion Is Not Congruent with the Claims in His
            Complaint ................................................................................................................ 9
        Dr. Belnap Has Not Yet Exhausted Administrative Remedies .............................. 9
    The Other Factors Weigh Against the Motion ..................................................................... 12
CONCLUSION ............................................................................................................................. 14
ORDER ......................................................................................................................................... 14

## RELEVANT FACTS

Dr. Belnap is a physician licensed to perform surgery in the State of Utah.[3] According to his Complaint, he has special expertise in organ transplantation and complex cancer cases.[4] In 2009, Dr. Belnap obtained staff membership and surgical privileges at Salt Lake Regional Medical Center ("SLRMC"),[5] which privileges were in addition to privileges he already obtained at South Town Surgery Center ("STSC").[6] He filed a lawsuit against SLRMC and other Defendants in February 2014 seeking declaratory relief, injunctive relief, and damages for, among other things, SLRMC's and Defendants' attempt to exclude him from the market,[7] failing to follow Bylaws when suspending him in 2013,[8] and publishing untrue statements about him.[9] All of this, Dr. Belnap alleges, is "outrageous and intolerable" conduct.[10]

---

[3] Complaint at 3, ¶ 12.

[4] *Id.*

[5] *Id.* at 4, ¶ 14.

[6] *Id.*, ¶ 13.

[7] *Id.* at 13-15.

[8] *Id.* at 15-16.

[9] *Id.* at 17.

[10] *Id.* at 19.

**The Complaint**

Dr. Belnap's Complaint lists seven causes of action:

(1) "Combination and Conspiracy in Restraint of Trade in Violation of Section 1 of the Sherman Act and Section 4 of the Clayton Act Against All Defendants;"[11]

(2) "Breach of Contract Arising For Violation of the Bylaws Against SLRMC;"[12]

(3) "Breach of the Implied Covenant of Good Faith and Fair Dealing Against SLRMC;"[13]

(4) "Defamation and/or Defamation *Per Se* Against All Defendants;"[14]

(5) "Intentional Infliction of Emotional Distress Against All Defendants;"[15]

(6) "Application for Injunctive Relief Against All Defendants;"[16] and

(7) "Request for Declaratory Relief for Violation Of The Federal Health Care Quality Improvement Act Against All Defendants."[17]

The first cause of action is based on allegations that on February 1, 2012, Dr. Belnap entered into a Management Services Agreement ("Agreement") with SLRMC to manage a new Abdominal Treatment Program known as the "Center."[18] However, according to Belnap, SLRMC "fail[ed] to complete the Center or fulfill the associated promises, [which] has harmed

---

[11] *Id.* at 13.

[12] *Id.* at 15.

[13] *Id.* at 16.

[14] *Id.* at 17.

[15] *Id.* at 19.

[16] *Id.*

[17] *Id.* at 20.

[18] *Id.* at 5, ¶ 20.

Dr. Belnap by damaging his competitiveness in the intermountain area, and eliminated patients' access to the services that Dr. Belnap could provide to the market."[19]

The balance of the Complaint is based on SLRMC's suspension of Dr. Belnap's medical privileges at SLRMC in 2013.[20] According to the Complaint, the Medical Executive Committee ("MEC") "enacted a summary suspension of Dr. Belnap's medical privileges based on the complaint of a female employee at SLRMC regarding a triggering event that allegedly occurred near a Hospital elevator, and other allegations of prior incidents."[21] Dr. Belnap alleges he requested a Fair Hearing to challenge the MEC's decision, and was ultimately successful in his challenge because the Fair Hearing Committee "FHC" "found the MEC's actions on the whole were not supported by the evidence, and were arbitrary and capricious."[22] "Subsequently, the Board of Trustees met and voted to adopt the MEC and FHC's recommendations and vacated the suspension in full."[23] Dr. Belnap alleges the MEC's suspension violated the SLRMC's Bylaws.[24] Dr. Belnap also alleges that Defendants engaged in other malicious conduct in violation of the Bylaws.[25]

## The Motion for Preliminary Injunction

More than ten months after filing his Complaint, Dr. Belnap filed this Motion for Preliminary Injunction. In this Motion, Dr. Belnap alleges that since the filing of the lawsuit, "Defendants have continued in their malicious and deliberate efforts to remove [him] from

---

[19] *Id.* at 6, ¶ 22.

[20] *Id.*, ¶ 23.

[21] *Id.*

[22] *Id.* at 8, ¶ 30.

[23] *Id.*

[24] *See, e.g.*, *id.* at 7, ¶ 25.

[25] *See, e.g., id.* at 8-9, ¶¶ 32-34.

SLRMC and damage his career . . . ."[26] He states that "Defendants produced false information that caused [his] removal from an insurance panel; Defendants interfered with [his] application for privileges at another Defendant[-]owned hospital, Jordan Valley Medical Center ("JVMC"), which forced [him] to defend himself (successfully) at a second Fair Hearing at JVMC in October of 2014; and Defendants verbally attacked Cara Drury, Dr. Belnap's full-time Certified Physician's Assistant, causing such stress that it made her end her working relationship with Dr. Belnap in that capacity."[27]

Dr. Belnap alleges that in furtherance of these alleged wrongs "the MEC met on September 22, 2014 to consider Dr. Belnap's application for reappointment to SLRMC and recommended that it be denied[.]"[28] This recommendation, according to Dr. Belnap, was based on a host of procedural missteps and bad faith conduct by Defendants.[29] Dr. Belnap explains that on October 21, 2014, he requested a Fair Hearing to challenge the MEC's adverse recommendation.[30] This "third Fair Hearing" is scheduled to take place in February 2015.[31] Dr. Belnap warns that unless his Motion is granted, "Defendants will continue in their wrongful pursuit to destroy [his] career."[32] The specific relief sought in Dr. Belnap's Motion is an injunction to "immediately . . . stop Defendants' wrongful acts and to postpone a third Fair Hearing until such time as this case can be fully and fairly litigated."[33]

---

[26] Motion at 7.

[27] *Id.*

[28] *Id.* at 16, ¶ 32.

[29] *See, e.g.*, *id.* at 11-14, ¶¶ 17-29.

[30] *Id.* at 18, ¶ 37.

[31] *Id.* at 19, ¶ 41.

[32] *Id.* at 7.

[33] *Id.*

*None of the new factual allegations listed in the Motion*—including his application for privileges at JVMC or his reapplication for privileges at SLRMC in 2014—*have been added, or sought to be added, to the Complaint.*

SLRMC's Bylaws are attached to Dr. Belnap's Motion.[34] The Bylaws outline the purposes and responsibilities of the medical staff,[35] describe the nature of medical staff and clinical privileges,[36] define the categories of the staff,[37] and explain the procedures for obtaining[38] and suspending[39] clinical privileges. The Bylaws explain that the MEC or Board may interview a physician when considering initiation of adverse action,[40] and the Bylaws further outline the procedures that must be taken once a hearing is requested.[41] The Bylaws explain the "Fair Hearing Plan," which allows a physician who is adversely affected by a recommendation from the MEC,[42] such as denial of reappointment,[43] to request a hearing (Dr. Belnap's Motion refers to this hearing as a "Fair Hearing").[44] If the result of the "Fair Hearing" is adverse to the practitioner, the practitioner must be given notice of his/her right to "Appellate Review"[45] before an "Appellate Review Body," which may "affirm, modify or reverse the adverse result or action

---

[34] *Id.*, Exhibit A ("Bylaws"), docket no. 37-1, filed December 22, 2014.

[35] Bylaws, Article II.

[36] Bylaws, Article III.

[37] Bylaws, Article IV.

[38] Bylaws, Article VII.

[39] Bylaws, Article VIII.

[40] Bylaws, Article IX.

[41] Bylaws, Article XVI.

[42] Bylaws, Article XVI, § 1.2 (1).

[43] Bylaws, Article XVI, § 1.1(2).

[44] Bylaws, Article XVI, § 1.4.

[45] Bylaws, Article XVI, § 4.3(c).

taken by the MEC . . . ."[46] After the Appellate Review Body has issued its final recommendation to the Board, the Board may "affirm, modify, or reverse the recommendation."[47] "The decision made by the full Board after receipt of the written recommendation from the Appellate Review Body will be deemed final, subject to no further appeal under the provisions of this Fair Hearing Plan."[48]

Pertinent to this Motion, the Fair Hearing Plan states that "Appellate Review shall not be deemed to be concluded until all of the procedural steps provided herein have been completed or waived."[49] The Bylaws also explain that in order to obtain privileges at SLRMC in the first instance, a physician must agree that

> he/she will exhaust the administrative remedies afforded by these Bylaws *before* resorting to formal legal action, should an adverse ruling be made with respect to his/her Medical Staff Membership, Medical Staff status, and/or Clinical Privileges.[50]

As noted above, the MEC met on September 22, 2014 to consider Dr. Belnap's application for reappointment to SLRMC and recommended that it be denied.[51] Dr. Belnap then requested a "Fair Hearing" to challenge the MEC's adverse recommendation.[52] This "third Fair Hearing" is scheduled to take place in February 2015. Dr. Belnap seeks to postpone it "until such time as this case can be fully and fairly litigated."[53]

---

[46] Bylaws, Article XVI, § 6.8.

[47] Bylaws, Article XVI, § 7.1.1.

[48] Bylaws, Article XVI, § 7.1.1.

[49] Bylaws, Article XVI, § 6.9.

[50] Bylaws, Article VI, § 6.2(b) (emphasis added).

[51] Motion at 16, ¶ 32.

[52] *Id.* at 18, ¶ 37.

[53] *Id.* at 7.

7

**DISCUSSION**

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."[54] To be successful, "the movant must establish 'a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint.'"[55]

### Dr. Belnap Has Not Shown He Is Likely to Succeed on the Merits

"A preliminary injunction is . . . appropriate to grant intermediate relief of the same character as that which may be granted finally."[56] "When the movant seeks intermediate relief beyond the claims in the complaint, the court is powerless to enter a preliminary injunction."[57]

In *Hicks v. Jones*, the Tenth Circuit held that "the district court did not abuse its discretion in denying a preliminary injunction" where the plaintiff, Hicks, sought relief on a matter "lying wholly outside the issues in his suit."[58] Hicks was a prisoner who was assaulted by his violent cellmate and suffered a broken hand. He filed suit alleging that defendants failed to protect him from his cellmate. But he also sought a preliminary injunction to prevent his transfer out of the prison's protective custody unit, which apparently was scheduled to close. Although both the complaint and the preliminary injunction arguably related to his alleged mistreatment at

---

[54] *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20, 12 S.Ct. 365, 374 (2008).

[55] *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010); *see also Penn v. San Juan Hospital, Inc.*, 528 F.2d 1181, 1185 (10th Cir. 1975) (teaching that burden is on movant to establish right to preliminary injunction and he "must do so by clear proof that he will probably prevail when the merits are tried, *so to this extent there is a relation between temporary and permanent relief*." (emphasis added)).

[56] *Hicks v. Jones*, 332 Fed. App'x. 505, 508 (10th Cir. 2009) (unpublished) (ellipses in original) (citing *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945)).

[57] *Hicks v. Sirmons*, No. CIV 07-238, 2008 WL 4533988, *1 (E.D.Okla. Oct. 3, 2008) (unpublished) (listing cases).

[58] *Hicks*, 332 Fed. App'x. at 508.

8

the prison, the Tenth Circuit agreed with the district court that the relief requested in the preliminary injunction was not "of the same character as that which may be granted finally."[59]

### *The Relief Sought in the Motion Is Not Congruent with the Claims in His Complaint*

Like the plaintiff in *Hicks*, Dr. Belnap's Motion seeks relief outside his Complaint. His Complaint does not mention the "third Fair Hearing" at all; rather, his Complaint is based almost exclusively on a previous Fair Hearing process that commenced and concluded in 2013.[60] That process, according to Dr. Belnap, was unfair and malicious and was tied to the sexual harassment allegations. The most recent Fair Hearing, on the other hand, is tied to denial of his application for reappointment. The Complaint does not include any allegations about his application for reappointment which, according to Dr. Belnap, began in September 2014—more than a year after his privileges had been reinstated after the first "wrongful" suspension.[61] Thus, because Dr. Belnap's Motion bears no relation to the merits of the claims in the Complaint, and because he "seeks intermediate relief beyond the claims in the complaint, the court is powerless to enter a preliminary injunction."[62]

Amending the Complaint will not at this time resolve the issue. Even if amendment were sought and granted, an injunction still would not be appropriate because Dr. Belnap has failed to exhaust his administrative remedies under the Bylaws.

### *Dr. Belnap Has Not Yet Exhausted Administrative Remedies*

As Dr. Belnap points out,[63] SLRMC's peer review process is established under a federal law titled the Health Care Quality Improvement Act ("HCQIA").[64] The HCQIA was established

---

[59] *Id.*

[60] Complaint at 6-8.

[61] Motion at 16, ¶ 32.

[62] *Hicks v. Sirmons*, 2008 WL 4533988, *1.

[63] Complaint at 20, ¶ 84.

9

to "to improve the quality of medical care" around the country.[65] To that end, Congress found that "effective professional peer review" should be implemented, with hospitals empaneling boards of review to conduct hearings on physician privileges.[66] Recognizing that such proceedings could potentially subject members of such boards to personal liability, Congress provided a provision whereby any person participating in a professional review action could be protected from liability, so long as that action comported with standards of fairness and due process.[67] Accordingly, HCQIA-compliant professional review processes necessarily include certain due process procedures that protect a physician from inappropriate deprivations of property.[68]

Here, the due process procedures under SLRMC's Bylaws—the Bylaws under which Dr. Belnap was practicing—required him to "exhaust the administrative remedies afforded by these Bylaws *before* resorting to formal legal action, should an adverse ruling be made with respect to his . . . Medical Staff membership, Medical Staff status, and/or Clinical Privileges."[69] Dr. Belnap has not done so. In fact, the very purpose of his Motion is to *avoid* compliance with the Bylaws and *avoid* participation in the Fair Hearing.[70]

---

[64] 42 U.S.C. §§ 11101-52 (West 2014).

[65] *Id.* at § 11101.

[66] *Id.*

[67] *Id.* at §§ 11112(a) & 11111.

[68] *Id.*

[69] Bylaws, Article VI, § 6.2(b) (emphasis added).

[70] *See* Motion at 25 (requesting to "allow Dr. Belnap [to] remain at SLRMC with full privileges and [enjoin] Defendants . . . from conducting another Fair Hearing on 'behavioral issues' or taking any other related action that could affect Dr. Belnap's privileges or staff membership at SLRMC.").

"Courts typically require a physician to *exhaust all due process procedures provided by the healthcare facility before seeking an injunction* through the courts."[71] Scholars have compared judicial review of peer review proceedings to judicial review of administrative decisions, "requiring exhaustion of in-hospital remedies and deferring to peer review findings of fact and application of decision-making discretion."[72] This is because a hospital's peer review process is a "quasi-public" process that carries out regulatory functions.[73] It is also significant that the entity performing peer review has "special claims to competence or expertise; their acts and decisions are supposed to serve (at least in part) the public interest[.]"[74]

Dr. Belnap has failed to show a likelihood of success on the merits because the relief he seeks in his Motion is incongruent with the claims in his Complaint. However, even if the Complaint were amended to add claims regarding the relief his Motion seeks, a preliminary injunction still would not be warranted because Dr. Belnap has not yet exhausted his administrative remedies. Therefore, because of the importance placed on professional peer review under the HCQIA, and because the Bylaws require Dr. Belnap to exhaust administrative remedies, a preliminary injunction will not be granted to halt the Fair Hearing process in February.

---

[71] 1 Health L. Prac. Guide § 2:10 (2014) (emphasis added) (citing *Pierson v. Orlando Regional Healthcare Systems, Inc.*, 2010 WL 1408391, *16 (M.D. Fla. 2010), aff'd, 451 Fed. Appx. 862 (11th Cir. 2012), cert. denied, 2013 WL 141189 (U.S. 2013); *Lee v. Banner Health*, 214 P.3d 589, 593 (Colo. App. 2009); *Crow v. Penrose–St. Francis Healthcare System*, 169 P.3d 158 (Colo. 2007); and *Eight Unnamed Physicians v. Medical Executive Committee of Medical Staff of Washington Tp. Hosp.*, 150 Cal. App. 4th 503, 59 Cal. Rptr. 3d 100 (1st Dist. 2007), as modified on denial of reh'g, (May 22, 2007).

[72] Jost, Health Law and Administrative Law, 29 St. Louis Univ. L.J. 1, 29 (2004).

[73] *See id.* at 6.

[74] *Id.*

**The Other Factors Weigh Against the Motion**

The other factors also weigh against the Motion. First, Dr. Belnap currently fails to show irreparable harm. "To constitute irreparable harm, an injury must be certain, great, actual, and not theoretical."[75] It is not certain that Dr. Belnap will suffer irreparable harm if an injunction does not issue. As of today, he continues to perform surgeries at SLRMC with "full active privileges."[76] Thus, there is currently no significant harm being suffered by Dr. Belnap. If his clinical privileges or staff membership are taken away, Dr. Belnap will have a stronger argument. But first, the Fair Hearing must result in an adverse recommendation, which result, according to the results of prior Fair Hearings in which Dr. Belnap has participated, is not certain. Therefore, the alleged harm Dr. Belnap asserts is not the kind of "certain, great, actual, and not theoretical" injury required for "irreparable harm."

Second, Dr. Belnap has failed to show the balance of "competing claims of injury" tips in his favor.[77] The inquiry is whether the threatened injury to the moving party outweighs the injury to the non-moving party.[78] The injury threatened at this time to Dr. Belnap is small, as discussed in the immediately preceding paragraph. Even if the Fair Hearing results in an adverse ruling for Dr. Belnap, which is not certain, he would still be able to practice medicine at STSC and, as the most recent briefing indicates, JVMC.[79] Therefore, Dr. Belnap has failed to show that his injuries at this time would be "certain, great, actual, and not theoretical."[80]

---

[75] *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003).

[76] Declaration of Legrand P. Belnap, M.D. In Support of Plaintiff's Motion for Preliminary Injunction, docket no. 37-2 at 6, ¶ 25, filed December 22, 2014.

[77] *Winter*, 555 U.S. at 24.

[78] *Heideman*, 348 F.3d at 1188.

[79] Dr. Belnap explains that the Fair Hearing Committee ruled in favor of granting Dr. Belnap privileges at JVMC, and a final decision would be issued on or about January 21, 2015. Motion at 18, ¶¶ 39, 40.

[80] *Heideman*, 348 F.3d at 1188.

The injury to Defendants is also slight, as the injury in granting the preliminary injunction would be merely to postpone the Fair Hearing. Defendants assert an injunction would "depriv[e] the Hospital and its MEC of any ability to take actions in connection with Dr. Belnap in the future to protect patient safety and further patient care."[81] But Dr. Belnap says he is not asking for SLRMC to stop taking "***any*** legitimate action."[82] He is "simply asking that this Court postpone this specific third Fair Hearing . . . ."[83] Under an injunction, according to Dr. Belnap, SLRMC would still retain the ability to proceed under its Bylaws with outside peer review where patient safety was an issue.[84] Thus, the potential injury to the Defendants of issuing the injunction is not great. Nevertheless, Dr. Belnap has not currently shown the balance of injury tips in his favor.

Finally, Dr. Belnap has failed to show that an injunction is in the public interest.[85] While he argues that "[d]enying him privileges would effectively terminate his practice and eliminate his ability to provide critical, life saving surgeries for his patients, who will not be able to receive the same care elsewhere,"[86] he fails to show how this is true. Aside from argument by counsel, the record contains no evidentiary support for the assertion that Dr. Belnap is irreplaceable or that other doctors are unable to provide the care he provides. Furthermore, Dr. Belnap fails to show why patients could not receive care from him at the medical facilities at which he retains privileges (including SLRMC, depending on the outcome of the Fair Hearing in February).

---

[81] Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction at 9, docket no. 38, filed January 8, 2015.

[82] Plaintiff's Reply Memorandum in Support of Motion for Preliminary Injunction at 8, docket no. 39, filed January 21, 2015 (emphasis in original).

[83] *Id.*

[84] *Id.*

[85] *Winter*, 555 U.S. at 20.

[86] Motion at 30.

## CONCLUSION

For the foregoing reasons, Dr. Belnap's motion for a preliminary injunction is denied at this time. Not only is the requested relief incongruent with the claims in the Complaint, Dr. Belnap has failed to exhaust the administrative remedies available to him at the hospital. Dr. Belnap has also currently failed to establish the factors necessary to grant a preliminary injunction.

## ORDER

IT IS HEREBY ORDERED that Plaintiff's Motion for Preliminary Injunction and Memorandum in Support Thereof[87] is DENIED.

Dated February 4, 2015.

BY THE COURT:

David Nuffer
United States District Judge

---

[87] Plaintiff's Motion for Preliminary Injunction and Memorandum in Support Thereof, docket no. 37, filed December 22, 2014.